**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| JONATHAN RAUL,<br><br>                    Plaintiff,<br><br>    v.<br><br>NATIONAL HOLDINGS CORPORATION,<br>MICHAEL MULLEN, BARBARA CREAGH,<br>ROBERT FAGENSON, JEFFREY GARY,<br>DANIEL HUME, NASSOS MICHAS, and<br>MICHAEL SINGER,<br><br>                    Defendants. | Civil Action No.<br><br>**COMPLAINT FOR VIOLATIONS**<br>**OF THE FEDERAL SECURITIES**<br>**LAWS**<br><br><br>**JURY TRIAL DEMANDED** |

Plaintiff Jonathan Raul ("Plaintiff") by and through his undersigned attorneys, brings this action on behalf of himself and alleges the following based upon personal knowledge as to those allegations concerning Plaintiff and, as to all other matters, upon the investigation of counsel, which includes, without limitation: (a) review and analysis of public filings made by National Holdings Corporation ("National" or the "Company") and other related parties and non-parties with the United States Securities and Exchange Commission ("SEC"); (b) review and analysis of press releases and other publications disseminated by certain of the Defendants (defined below) and other related non-parties; (c) review of news articles, shareholder communications, and postings on National's website concerning the Company's public statements; and (d) review of other publicly available information concerning National and the Defendants.

**NATURE OF THE ACTION**

1.    Plaintiff brings this action against the Company and members of the Company's Board of Directors (the "Board" or the "Individual Defendants") for violations of Sections

14(d)(4), 14(e) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15

U.S.C. §§ 78n(d)(4), 78n(e), 78t(a), and SEC Rule 14d-9, 17 C.F.R. §240.14d-9(d) ("Rule 14d-

9"), in connection with the proposed acquisition of the Company via tender offer by B. Riley

Financial, Inc. ("B. Riley") (the "Proposed Transaction").

2.      On January 10, 2021, National announced that the Company had entered into a

definitive agreement and plan of merger with Philips (the "Merger Agreement"), pursuant to

which B. Riley commenced an all cash tender offer (the "Tender Offer") to purchase all

outstanding shares it doesn't own of National's common stock for $3.25 per share.

3.      On January 27, 2021, the Company filed an incomplete and materially misleading

recommendation statement with the SEC (the "Recommendation Statement") on Form 14D9 in

connection with the Proposed Transaction.

4.      Accordingly, the failure to adequately disclose such material information

constitutes a violation of Sections 14(d), 14(e) and 20(a) of the Exchange Act as National

stockholders need such information in order to make a fully informed decision whether to tender

their shares in support of the Proposed Transaction.

5.      As set forth more fully herein, Plaintiff seeks to enjoin Defendants from

proceeding with the Proposed Transaction.

## JURISDICTION AND VENUE

6.      This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange

Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 as Plaintiff alleges violations of Sections 14(d)(4),

14(e) and 20(a) of the Exchange Act

7.      This Court has personal jurisdiction over all of the Defendants because each is

either a corporation that conducts business in, solicits shareholders in, and/or maintains

operations within, this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

8.      Venue is proper under 28 U.S.C. § 1391 because a substantial portion of the transactions and wrongs complained of herein occurred in this District.   In addition, the Company's common stock trades on the NASDAQ, which is headquartered in this District.

## THE PARTIES

9.      Plaintiff has been the owner of the common stock of National since prior to the transaction herein complained of and continuously to date.

10.      Defendant National is a Delaware corporation with its principal executive offices located at 200 Vesey Street, 25th Floor, New York, New York 10281.   The Company's stock trades on the NASDAQ under the ticker "NHLD."

11.      Defendant Michael Mullen ("Mullen") is and has been the Chief Executive Officer and Chairman of the Board of National at all times during the relevant time period.

12.      Defendant Barbara Creagh ("Creagh") is and has been a director of National at all times during the relevant time period.

13.      Defendant Robert Fagenson ("Fagenson") is and has been a director of National at all times during the relevant time period.

14.      Defendant Jeffrey Gary ("Gary") is and has been a director of National at all times during the relevant time period.

15.      Defendant Daniel Hume ("Hume") is and has been a director of National at all times during the relevant time period.

16.     Defendant Nassos Michas ("Michas") is and has been a director of National at all times during the relevant time period.

17.     Defendant Michael Singer ("Singer") is and has been a director of National at all times during the relevant time period.

18.     Defendants Mullen, Creagh, Fagenson, Gary, Hume, Michas, and Singer are collectively referred to herein as the "Individual Defendants."

19.     Defendant National, along with the Individual Defendants, are collectively referred to herein as "Defendants."

**SUBSTANTIVE ALLEGATIONS**

**<u>Background of the Company</u>**

20.     National through its subsidiaries, offers securities brokerage services. The Company offers stock and bond brokerage services, insurance products and individual retirement accounts, and advises on initial public offerings and private placements.

**<u>The Company Announces the Proposed Transaction</u>**

21.     On January 11, 2021, National and B. Riley issued a press release announcing that the Company had entered an agreement in connection with the Proposed Transaction.  The press release stated, in pertinent part:

> LOS ANGELES and NEW YORK, Jan. 11, 2021 /PRNewswire/ -- B. Riley Financial, Inc. (NASDAQ: RILY) ("B. Riley"), a diversified financial services and business advisory company, has entered a definitive agreement to acquire National Holdings Corporation (NASDAQ: NHLD) ("National"), a full-service investment banking and asset management firm that, through its affiliates, provides a range of services including financial advisory, investment banking, institutional sales and trading, equity research, financial planning, market making, tax preparation and insurance to corporations, institutions, high net-worth individuals and retail investors.
>
> The transaction contemplates a merger that would enhance each of the companies' complementary investment banking, capital markets and wealth management

4

businesses, with the potential to meaningfully augment the combined platforms' episodic and recurring results. The transaction has been unanimously approved by the Boards of Directors of both B. Riley and National and recommended by the independent Special Committee of National's Board of Directors.

Under the terms of the agreement, B. Riley will commence an all cash tender offer for the remaining shares of National it does not currently own at a purchase price of $3.25 per share. B. Riley currently owns approximately 45% of the common stock of National. National's Board of Directors has recommended to shareholders of National that they tender their shares into the tender offer.

"Over the past two years, we have built great respect and appreciation for National's management, as well as for its financial professionals and branch owners whose continued growth will be critical to the success of our combined firms. Through our ongoing partnership, we have validated that our teams can work cohesively to the mutual benefit of our organizations. To be clear, retaining National's management team and preserving its branch owner and representative agreements are critically important to our investment thesis," said Bryant Riley, Chairman and Co-Chief Executive Officer of B. Riley Financial. "Our wealth management business, led by Chuck Hastings, has evolved into an integral piece of our platform. Combining with National significantly expands our retail channel with the addition of hundreds of quality advisors, and more than doubles our current assets under management. We believe this combination will only serve to enhance all of our professionals' businesses through diversified product offerings and access to a broader suite of investment solutions for clients. We could not be more excited to join forces with National as we continue to build upon our market-leading financial services franchise."

"This is an exciting milestone in the history of our firm and its 70-year heritage in the capital markets. Our continued efforts to transform National has allowed us to grow and further diversify our business, while attracting top talent to our platform. We have worked closely with the world-class team at B. Riley for the past two years. This combination is the right next step in our evolution. Our core focus will remain on servicing our clients and we will continue to intelligently scale our business for the benefit of both firms' clients and shareholders. This combination affords our firms' expanded network of financial professionals with access to differentiated solutions, robust equity research and enhanced sales and trading capabilities, in addition to a wide array of customized corporate finance and business advisory solutions," said Michael Mullen, Chairman and Chief Executive Officer of National Holdings. "My team and I have enjoyed working closely with Chuck and his team at B. Riley Wealth. We are especially excited to take this next step together as we work to build out what we all believe will be a best-in-class wealth management platform."

**Combination Enhances Platform; Meaningfully Expands Retail Distribution with Minimal Overlap**

A merger between B. Riley and National provides significant synergies to the existing complementary businesses under each firm, with minimal overlap, while also enhancing the combined platform's episodic and recurring results.

National operates through several subsidiaries with approximately 1,000 affiliated personnel in 141 locations across 23 states. Its largest subsidiary, National Securities, is a full-service middle market brokerage firm founded in 1947, which is operated primarily through independent registered representatives. National includes a network of 733 registered representatives managing $18.9 billion in client assets as of January 8, 2021. National reported total revenues of $229.9 million for its fiscal 2020, ending September 30, 2020.

This combination meaningfully expands upon B. Riley's private wealth management business. B. Riley Wealth Management includes over 170 registered representatives managing over $10 billion in client assets. Combining with National's network of registered representatives provides additional retail distribution opportunities for its B. Riley Securities affiliate, which is a full service investment bank and leading small- and mid-cap capital markets franchise.

B. Riley Financial has approximately 1,000 affiliated personnel and operates through several subsidiaries which provide collaborative financial services solutions tailored to fit the capital raising, business, operational, and financial advisory needs of its clients and partners. Services span investment banking, investment management, corporate advisory, restructuring, due diligence, forensic accounting, litigation support, appraisal and valuation, and auction and liquidation services. Other subsidiaries include B. Riley Advisory Services (formerly known as GlassRatner and Great American Appraisal) and B. Riley Retail Solutions (formerly known as Great American Group).

**Closing Details**

The transaction is not subject to any financing condition and has been unanimously approved by the respective Boards of Directors of B. Riley and National. The deal is expected to close during the first quarter of 2021, subject to customary closing conditions including receipt of required regulatory approvals.

Sullivan & Cromwell LLP is serving as legal counsel to B. Riley Financial. Wilmer Cutler Pickering Hale and Dorr LLP is serving as legal counsel to National and Skadden, Arps, Slate, Meagher & Flom LLP is serving as legal counsel to the Special Committee of National's Board of Directors. Keefe, Bruyette & Woods is serving as financial advisor to the Special Committee of National's Board of Directors.

**FALSE AND MISLEADING STATEMENTS**
**AND/OR MATERIAL OMISSIONS IN THE RECOMMENDATION STATEMENT**

22.     On January 27, 2021, the Company authorized the filing of the Recommendation

Statement with the SEC.   The Recommendation Statement recommends that the Company's

stockholders tender their shares in favor of the Proposed Transaction.

23.     Defendants were obligated to carefully review the Recommendation Statement

prior to its filing with the SEC and dissemination to the Company's shareholders to ensure that it

did not contain any material misrepresentations or omissions.   However, the Recommendation

Statement misrepresents and/or omits material information that is necessary for the Company's

shareholders to make informed decisions concerning whether to tender their shares in favor of

the Proposed Transaction.

**Material False and Misleading Statements or Material**
**Misrepresentations or Omissions Regarding Managements Projections**

24.     The Recommendation Statement contains financial projections prepared by senior

members of National's management in connection with the Proposed Transaction, but fails to

provide material information concerning such.

25.     The SEC has repeatedly emphasized that disclosure of non-GAAP projections can

be inherently misleading, and has therefore heightened its scrutiny of the use of such

projections.[1]   Indeed, on May 17, 2016, the SEC's Division of Corporation Finance released new

and updated Compliance and Disclosure Interpretations ("C&DIs") on the use of non-GAAP

---

[1] *See, e.g.*, Nicolas Grabar and Sandra Flow, Non-GAAP Financial Measures: The SEC's
Evolving Views, Harvard Law School Forum on Corporate Governance and Financial
Regulation (June 24, 2016), *available at* https://corpgov.law.harvard.edu/2016/06/24/non-gaap-
financial-measuresthesecs evolving-views/; Gretchen Morgenson, Fantasy Math Is Helping
Companies Spin Losses Into Profits, N.Y. Times, Apr. 22, 2016, available at
http://www.nytimes.com/2016/04/24/business/fantasy-mathis-helping-companies-spin-ossesinto-
profits.html?_r=0.

financial measures that demonstrate the SEC's tightening policy.[2] One of the new C&DIs regarding forward-looking information, such as financial projections, explicitly requires companies to provide any reconciling metrics that are available without unreasonable efforts.

26.     In order to make management's financial projections included in the Recommendation Statement materially complete and not misleading, Defendants must provide a reconciliation table of the non-GAAP measures to the most comparable GAAP measures.

27.     Specifically, with respect to all of the Company's applicable projections, the Company must disclose the line item projections for the financial metrics that were used to calculate the non-GAAP measures, including: (i) EBITA; and (ii) Adjusted EBITDA.

28.     Disclosure of the above information is vital to provide investors with the complete mix of information necessary to make an informed decision when deciding whether to tender their shares in support of the Proposed Transaction.  Specifically, the above information would provide shareholders with a better understanding of the analyses performed by the Company's financial advisor in support of its opinion.

**Material False and Misleading Statements or Material
Misrepresentations or Omissions Regarding KBW's Opinion Statement**

29.     The Recommendation Statement contains the financial analyses and opinion of Keefe, Bruyette & Woods, Inc. ("KBW") concerning the Proposed Transaction but fails to provide material information concerning information such.

30.     With respect to KBW's *Selected Companies Analysis*, the Recommendation Statement fails to disclose the individual multiples and metrics for each of the companies observed in the analysis.

---

[2] Non-GAAP Financial Measures, Compliance & Disclosure Interpretations, U.S. SECURITIES AND EXCHANGE COMMISSION (May 17, 2017), *available at* https://www.sec.gov/divisions/corpfin/guidance/nongaapinterp.htm.

31.     With respect to KBW's *Selected Transaction Analysis*, the Recommendation Statement fails to disclose the individual multiples and metrics for each of the transactions observed in the analysis.

32.     With respect to KBW's *Discounted Cash Flow Analysis*, the Recommendation Statement fails to disclose: (i) the Company's terminal value; (ii) the inputs and assumptions underlying KBW's use of discount rates from 19.2% to 23.2%; and (iii) the basis for KBW's application of a range of 5.0x to 10.0x to calculate implied terminal values for National.

33.     When a banker's endorsement of the fairness of a transaction is touted to shareholders, the valuation methods used to arrive at that opinion as well as the key inputs and range of ultimate values generated by those analyses must also be fairly disclosed.  Moreover, the disclosure of projected financial information is material because it provides stockholders with a basis to project the future financial performance of a company and allows stockholders to better understand the financial analyses performed by the company's financial advisor in support of its fairness opinion.

34.     Without the above described information, the Company's shareholders are not fully informed with respect to the Proposed Transaction.  Accordingly, in order to provide shareholders with a complete mix of information, the omitted information described above should be disclosed.

### Material False and Misleading Statements or Material Misrepresentations or Omissions Regarding the Sales Process

35.     The Recommendation Statement contains information concerning the process leading up to the Proposed Transaction, but fails to include material information concerning such.

36.     Specifically, the Recommendation Statement fails to disclose whether any parties entered into any "don't ask, don't waive" ("DADW") provisions that would prevent the potential suitor from making a topping bid for the Company.  This information is material to shareholders in deciding whether to tender their shares in favor of the Proposed Transaction, as it would show whether or not a superior offer for the Company was available.

## COUNT I

### (Against All Defendants for Violations of Section 14(d)
### of the Exchange Act and Rule 14d-9 Promulgated Thereunder)

37.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

38.     Section 14(d)(4) of the Exchange Act and Rule 14d-9 promulgated thereunder makes it a requirement to make full and complete disclosure in connection with tender offers.

39.     As discussed herein, the Recommendation Statement, while soliciting shareholder support for the Proposed Transaction, misrepresent and/or omit material facts concerning the Proposed Transaction.

40.     Defendants prepared, reviewed, filed and disseminated the false and misleading Recommendation Statement to National shareholders. In doing so, Defendants knew or recklessly disregarded that the Recommendation Statement failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

41.     The omissions and incomplete and misleading statements in the Recommendation Statement are material in that a reasonable shareholder would consider them important in deciding whether to tender their shares in favor of the Proposed Transaction. In addition, a

reasonable investor would view such information as altering the "total mix" of information made available to shareholders.

42.     By virtue of their positions within the Company and/or roles in the process and in the preparation of the Recommendation Statement, Defendants were undoubtedly aware of this information and had previously reviewed it, including participating in the Proposed Transaction negotiation and sales process and reviewing National's financial advisor's complete financial analyses purportedly summarized in the Recommendation Statement.

43.     The Individual Defendants undoubtedly reviewed and relied upon the omitted information identified above in connection with their decision to approve and recommend the Proposed Transaction.

44.     National is deemed negligent as a result of the Individual Defendants' negligence in preparing and reviewing the Recommendation Statement.

45.     Defendants knew that Plaintiff would rely upon the Recommendation Statement in determining whether to tender their shares in favor of the Proposed Transaction.

46.     As a direct and proximate result of Defendants' unlawful course of conduct in violation of Section 14(d)(4) of the Exchange Act and Rule 14d-9 promulgated thereunder, absent injunctive relief from the Court, Plaintiff will suffer irreparable injury by being denied the opportunity to make an informed decision as to whether to tender their shares in favor of the Proposed Transaction.

47.     Plaintiff has no adequate remedy at law.

## COUNT II

### (Against All Defendants for Violation
### Of Section 14(e) of the Exchange Act)

48.    Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

49.    Defendants violated Section 14(e) of the Exchange Act by issuing the Recommendation Statement in which they made false statements of material fact or failed to state all material facts that would be necessary to make the statements made, in light of the circumstances, not misleading, or engaged in deceptive or manipulative acts or practices, in connection with the Proposed Transaction.

50.    Defendants knew that Plaintiff and the Company's shareholders would rely upon their statements made in the Recommendation Statement in determining whether to tender shares in favor of the Proposed Transaction.

51.    As a direct and proximate result of Defendants' unlawful course of conduct in violation of Section 14(e) of the Exchange Act, absent injunctive relief from the Court, Plaintiff will suffer irreparable injury by being denied the opportunity to make an informed decision as to whether to tender their shares in favor of the Proposed Transaction.

## COUNT III

### (Against the Individual Defendants for
### Violations of Section 20(a) of the Exchange Act)

52.    Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

53.    The Individual Defendants acted as controlling persons of National within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as

officers and/or directors of National, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Recommendation Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading.

54.     Each of the Individual Defendants were provided with or had unlimited access to copies of the Recommendation Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

55.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations alleged herein, and exercised the same. The Recommendation Statement contain the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction. They were thus directly connected with and involved in the making of the Recommendation Statement.

56.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(e) of the Exchange Act, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons and the acts described herein, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act.

57.     As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

58.     Plaintiff has no adequate remedy at law.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A.     Preliminarily and permanently enjoining Defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction;

B.     Directing the Individual Defendants to disseminate an Amendment to the Recommendation Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

C.     Directing Defendants to account to Plaintiff for the damages sustained because of the wrongs complained of herein;

D.     Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

E.     Granting such other and further relief as this Court may deem just and proper.

## DEMAND FOR TRIAL BY JURY

Plaintiff hereby demands a trial by jury.

Dated: February 8, 2021                    Respectfully submitted,

                                           By:  /s/ Joshua M. Lifshitz
                                           Joshua M. Lifshitz
                                           Email: jml@jlclasslaw.com
                                           **LIFSHITZ LAW FIRM, P.C.**
                                           1190 Broadway
                                           Hewlett, New York 11557
                                           Telephone: (516) 493-9780
                                           Facsimile: (516) 280-7376

                                           *Attorneys for Plaintiff*